IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRUGREEN LANDCARE, L.L.C., §
§
    Plaintiff- §
    Counterdefendant, §
§ Civil Action No. 3:06-CV-0327-D
VS. §
§
KAYLYN SCOTT, Individually §
and d/b/a PROFESSIONAL RESEARCH §
AND REFERRALS, §
§
    Defendant- §
    Counterplaintiff- §
    Third-Party §
    Plaintiff, §
§
VS. §
§
CITY OF DALLAS and §
MARK DUEBNER, §
§
    Third-Party §
    Defendants. §

MEMORANDUM OPINION
AND ORDER

In this removed action, the dispositive question presented is whether the defendant-counterplaintiff-third-party plaintiff has established a viable claim for relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). Concluding that she has not, the court grants plaintiff-counterdefendant's and third-party defendants' motions for summary judgment dismissing the RICO claim and remands the balance of the case to state court.

I

Although this case is somewhat more involved than the following description reflects, this discussion of the background facts and procedural history is sufficient considering the focus of this decision. Plaintiff-counterdefendant TruGreen Landcare, L.L.C. ("TruGreen") sued defendant-counterplaintiff-third-party plaintiff Kaylyn Scott, individually and d/b/a Professional Research and Referrals ("Scott"), in Texas state court, seeking to recover on claims for breach of contract and on a sworn account. Scott later counterclaimed against TruGreen and filed a third-party action against third-party defendant the City of Dallas ("City"), alleging a claim for breach of contract. The City removed the case to this court on the basis (addressed below) that Scott has asserted a claim arising under federal law. Scott did not challenge the removal. About two months after the case was removed, she filed an amended counterclaim and third-party complaint[1] in which she added Mark Duebner ("Duebner"), a City employee, as a third-party defendant and explicitly alleged a claim for relief under RICO against the City, Duebner, and TruGreen. Although Scott's pleadings and summary judgment briefing are not entirely clear, the court assumes that she is asserting a single RICO claim based on an alleged substantive violation of RICO and a

_____

[1]Scott entitled her pleading a "cross-petition." The court will use the applicable federal terminology for the pleadings.

RICO conspiracy.

Scott contracted with the City to provide ground and maintenance service for the City Parks and Recreation Department.[2] Scott did not have equipment or personnel with which to service the City contract, so she entered into a subcontract ("Subcontract") with TruGreen to provide the labor, equipment, supervision, and expertise for the City's ground maintenance.  For her services as contractor, Scott received a percentage of the amount invoiced to the City.

Under the terms of the Subcontract, TruGreen was required to provide Scott with a monthly statement and proof of performance setting forth in detail all costs incurred in performing the work for the City.  Scott was then to remit TruGreen's invoice to the City for payment.  The City would issue a check to Scott, who would, in turn, pay TruGreen.

The Subcontract required that Scott open a lockbox and deposit the payments in the lockbox.  From the lockbox, Scott was entitled to her percentage (3%) of the payments received, and TruGreen had the right to the remainder (97%).  Instead of opening a lockbox, Scott deposited the City's checks in a business account to which

---

[2]Although both sides have filed motions for summary judgment, because the court is granting summary judgment in favor of the City, Duebner, and TruGreen on Scott's RICO claim, it will recount the evidence in a light favorable to Scott and draw all reasonable inferences in her favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

TruGreen was not a signatory.

After the City made several payments from which Scott failed to pay TruGreen its percentage, TruGreen notified the City that it was changing the "remit to" address from Scott's address to TruGreen's address.  TruGreen maintains that it notified Scott of this change and asked her to meet TruGreen's branch manager at the bank to open a lockbox account to facilitate disbursement of the funds, but she refused, and instead demanded that the City cancel and reissue to her all checks that had been sent directly to TruGreen.  The City contacted TruGreen and asked that the checks be returned.  Since TruGreen had not yet endorsed any of the checks, it returned the ones in its possession.  TruGreen contends that it did not attempt to cash the checks, and that it retained them only so that it could persuade Scott to open a lockbox.  The City reissued the checks, and Scott was eventually paid for all the checks sent to TruGreen.

Scott then terminated the Subcontract with TruGreen, stating that she would pay TruGreen in full within 30 days.  Scott did not pay TruGreen as promised.  Five months after Scott terminated the Subcontract, the City notified Scott that her Contract with the City had been cancelled.  The City noted that it was aware that Scott had not paid her subcontractors for services rendered, and it debarred her from doing business with the City for two years.  This lawsuit followed.

All parties have filed motions that are pending for decision. Concerning Scott's RICO claim, the City and Duebner move to dismiss for lack of subject matter jurisdiction, and TruGreen, the City, and Duebner move for summary judgment.[3]   Scott opposes their motions,[4] and she moves for summary judgment establishing that she is entitled to recover on her RICO claim.

II

The court begins by addressing whether it has subject matter jurisdiction in this case.[5]   Although the parties have not raised this question, the court must notice its own lack of subject matter jurisdiction *sua sponte*, if necessary.   *Kidd v. Sw. Airlines Co.*, 891 F.2d 540, 546 (5th Cir. 1990) ("While neither party argued that

_____

[3]TruGreen filed on September 21, 2006 objections to Scott's summary judgment response and a motion to strike her summary judgment evidence, and the City and Duebner filed on September 22, 2006 objections and a motion to strike Scott's summary judgment evidence offered in response to their motion, and the City and Duebner filed on November 13, 2006 objections to and a motion to strike Scott's summary judgment evidence offered in support of her own motion.   Given the court's reasoning and the result reached in this decision, the court overrules the objections and denies the motions to strike without prejudice as moot.

[4]Scott did not file her response to the motions within 20 days, as required by this court's local civil rules.   After the deadline had passed, she filed a motion requesting an extension of time to file her response, and she filed her responsive briefing on September 11, 2006.   Because the tardiness of her response has not prejudiced the summary judgment movants or interfered with the decisional process of the court, the court will consider it.

[5]The jurisdictional issue that the court addresses here is separate from the one that the City and Duebner have raised and that the court decides *infra* at § III.

the amended complaint provided an adequate basis for federal question jurisdiction, federal courts must address jurisdictional questions *sua sponte* when the parties' briefs do not bring the issue to the court's attention.").

In this case, plaintiff TruGreen sued defendant Scott in Texas state court, alleging that it was entitled to recover from her on a sworn account, as provided in Tex. R. Civ. P. 185, and for breach of contract.  It also sought attorney's fees and damages under state law.  Scott later counterclaimed against TruGreen and impleaded the City as a third-party defendant.  The City did not remove the case at that time because, as it candidly concedes in its notice of removal, Scott sued it only for breach of contract. "No federal claims or federal issues were stated."  Notice of Removal ¶ 4.

The City removed the case, however, after Scott responded to the City's first set of interrogatories.  In answers to three interrogatories——not in her state-court third-party petition——Scott stated that the facts and/or law on which she relied to assert that the City had no basis to terminate its contract with her were that the City had acted with bias and prejudice, and had violated federal law, including the United States Constitution, 42 U.S.C. § 1983, RICO, and the Fourteenth Amendment.  She also averred that she was entitled to punitive damages because, *inter alia*, the City had violated law and regulations of federal purchasing policies,

and that she was entitled to injunctive relief based on the fact that the City continued to violate 42 U.S.C. § 1983.   The City removed this case within a matter of weeks, contending on the basis of these answers——not based on her well-pleaded complaint——that Scott had asserted a claim arising under federal law.   Notice of Removal ¶ 6.[6]

The case was not removable, however, on this basis. "Ordinarily, the well-pleaded complaint rule governs federal question jurisdiction.   Under the rule, '[r]emoval is not possible unless the plaintiff's "well pleaded complaint" raises issues of federal law sufficient to support federal question jurisdiction.'" *Ervin v. Stagecoach Moving & Storage, Inc.*, 2004 WL 1253401, at *2 (N.D. Tex. June 8, 2004) (Fitzwater, J.) (alteration in original) (quoting *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993)); *see Carpenter v. Wichita Falls Indep. Sch. Dist.*,

---

[6]In its notice of removal, the City relied on two cases to assert that the interrogatory answers qualified as "other papers" that made the case removable at that time, even though it was not removable initially: *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992), and *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996).   Notice of Removal ¶ 7.   The City's reliance on those cases, however, was misplaced.   Those were amount-in-controversy decisions.   That is, in the context of removal based on diversity of citizenship (which has an amount in controversy requirement) they addressed the point in time at which a removing party could have determined that the amount in controversy was satisfied.   Neither case involved federal question removal——which is generally determined from the well-pleaded complaint——and neither undermines this court's conclusion that the content of Scott's third-party petition, not her interrogatory answers, governed whether she had pleaded a federal question claim that made the case removable.

44 F.3d 362, 366 (5th Cir. 1995) ("A determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint." (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908))). The well-pleaded complaint rule makes the plaintiff "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Therefore, even if federal claims are available, the plaintiff may remain in state court by relying exclusively on state law. *See id.* If, on its face, the plaintiff's state court complaint contains no issue of federal law, there is no federal question jurisdiction. *Aaron v. Nat'l Union Fire Ins. Co.*, 876 F.2d 1157, 1160-61 (5th Cir. 1989). A federal claim does not exist simply because facts are available in the complaint to suggest such a claim. *See Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 292 (E.D. Tex. 1988); *Chavez v. McDonald's Corp.*, 1999 WL 814527, at *2 (N.D. Tex. Oct. 8, 1999) (Fitzwater, J.) (holding that plaintiff had not alleged a federal-law claim even though he referred at one point to exhausting his administrative remedies under federal law, where he otherwise clearly alleged that his claims were based on Texas statutory or common law). Nor is the existence of a federal defense enough to establish federal question jurisdiction. *See, e.g., Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir. 2000) ("Yet the mere fact that a given federal law might

'apply' or even provide a federal defense to a state-law cause of action, is insufficient alone to establish federal question jurisdiction."). There are some exceptions to the well-pleaded complaint rule, such as complete preemption, but none applies here. Therefore, the content of Scott's third-party petition——i.e., her "well-pleaded complaint"——governed whether the case was removable. Her interrogatory answers played no role in this determination.[7]

Despite the fact that this case was not initially removable, Scott did not object when the case was removed. In fact, about two months after removal, she filed an amended counterclaim and third-party complaint in which she explicitly asserted a RICO claim against the City, Duebner, and TruGreen. "In most cases, federal courts base decisions about subject matter jurisdiction after removal on the plaintiff's complaint as it existed at the time that the defendant filed the removal petition." *Kidd*, 891 F.2d at 546 (citing *Lockwood Corp. v. Black,* 669 F.2d 324, 326 (5th Cir. 1982); *In re Carter,* 618 F.2d 1093, 1101 (5th Cir. 1980)). But "an alternative standard governs those situations where, after improper

---

[7]Moreover, "[b]ecause jurisdiction is so fundamental, any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Ins. Co.*, 810 F. Supp. 748, 750 (N.D. Tex. 1992) (Means, J.) (citing *Ashley v. Sw. Bell Tel. Co.*, 410 F. Supp. 1389, 1392 (W.D. Tex. 1976)). "The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).

removal, a case is tried on the merits without objection, and the federal court enters judgment." *Id.* (citing *Grubbs v. Gen. Elec. Credit Corp.,* 405 U.S. 699, 702 (1972)). "The jurisdictional issue . . . becomes whether the federal district court would have had jurisdiction over the case had it originally been filed in federal court." *Id.* (addressing jurisdictional issue on appeal) (citing *Grubbs,* 405 U.S. at 702). The pleadings are reviewed "as they existed at the time that the district court enter[ed] judgment." *Id.* (addressing appellate standard). "The 'trial on the merits' requirement comprehends a full bench or jury trial, as well as a summary judgment dismissal." *Id.* (citing *Farina v. Mission Inv. Trust,* 615 F.2d 1068, 1074 & n.16 (5th Cir. 1980)).

In this lawsuit, the three prongs of the *Grubbs* standard have been satisfied. The case was improperly removed, Scott has received a trial on the merits of her RICO claim (in the form of this summary judgment ruling), and Scott has not objected to this court's exercising jurisdiction and has thus waived all objections to removal jurisdiction. *See id.* Accordingly, the court holds that it has subject matter jurisdiction to decide whether Scott is entitled to recover on her RICO claim.

III

The City and Duebner move to dismiss Scott's third-party action for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). They contend, *inter alia*, that the court lacks jurisdiction over

- 10 -

her RICO claim because Scott lacks standing to assert such a claim
and because governmental immunity has not been waived.  Concerning
Duebner specifically, they argue that it is unclear whether he has
been sued in his official or individual capacity.  They maintain
that if he has been sued in his official capacity, he is entitled
to the same governmental immunity as is the City; if he is sued in
his individual capacity, he is entitled to qualified immunity.[8]

A

The City and Duebner contend that Scott lacks standing to
bring a RICO claim because she alleges that she lost the terminated
contract, other existing contracts, and opportunities for future
contracts, but these allegations do not support a claim of a
concrete financial loss.  In other words, the City and Duebner
challenge standing based on the sufficiency of Scott's allegations.

Under RICO, "the plaintiff only has standing if, and can only
recover to the extent that, he has been injured in his business or
property . . . ."  *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496
(1985).  Thus "[t]o prevail in a RICO suit, a plaintiff must

---

[8]The court will address the motion to dismiss for lack of
jurisdiction before it reaches the merits of the summary judgment
motions filed by the City and Duebner.  *See Ramming v. United
States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a
Rule 12(b)(1) motion is filed in conjunction with other Rule 12
motions, the court should consider the Rule 12(b)(1) jurisdictional
attack before addressing any attack on the merits.").  Because the
burden of establishing subject matter jurisdiction is on the party
seeking to invoke it, the court will resolve any doubt on the
question of subject matter jurisdiction in favor of the City.  *Id.*

demonstrate an injury to business or property." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001) (citing 18 U.S.C. § 1964(c)).  Although Scott's assertion that she has lost future contracts is probably insufficient to confer standing, she also alleges that the conduct of which she complains caused her to lose existing contracts, damaging her in the millions of dollars.  She has thus asserted a concrete financial loss in which she actually lost money, which is sufficient to confer standing.  *See In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) (citing *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994), for premise that, to establish RICO standing, plaintiffs must prove a "concrete financial loss," an actual loss "of their own money," and "not mere 'injury to a valuable intangible property interest'").  The court therefore holds that Scott has standing to bring her RICO claim, and it denies the motion on this basis.

B

The City contends that it is entitled to governmental immunity because, as a governmental entity, it cannot be liable under RICO. But the four cases the City cites for this proposition do not support its argument.  They all hold that a city or governmental entity cannot be held liable under RICO because it cannot form the necessary criminal intent or *mens rea*.  *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991) ("The RICO claims against Antelope and District fail because

- 12 -

government entities are incapable of forming a malicious intent.");
*Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 908 (3d Cir. 1991)
("We therefore review the district court's holding that a municipal
corporation like Gloucester Township cannot form the mens rea
necessary to commit or aid a pattern of racketeering activity.
Several other district courts have reached similar holdings.");
*Andrade v. Chojnacki*, 65 F.Supp.2d 431, 449 (W.D. Tex. 1999)
(adhering to prior judge's decision that governmental entities are
not capable of forming the criminal intent necessary to support
predicate RICO offenses); *Dammon v. Folse*, 846 F. Supp. 36, 37-38
(E.D. La. 1994) (holding that school board as municipal entity
lacked ability to form criminal intent necessary to commit required
predicate acts under RICO and was incapable of forming *mens rea*").
They do not hold that a city is *immune* from liability under RICO.

Moreover, as a general matter, cities do not enjoy Eleventh
Amendment immunity from suit in federal court on federal claims.
*See, e.g., Hess v. Port Auth. Trans-Hudson Corp.* 513 U.S. 30, 47
(1994) (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274,
280 (1977); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890)).
The City——for good reason——does not argue that it is entitled to
immunity based on the Eleventh Amendment. *See Alden v. Maine*, 527
U.S. 706, 756 (1999) (sovereign "immunity does not extend to suits
prosecuted against a municipal corporation or other governmental
entity which is not an arm of the State." (citing *Mt. Healthy City*

*Bd. of Ed.*, 429 U.S. at 280; *Lincoln County*, 133 U.S. 529)).
Accordingly, the court denies the City's motion to dismiss Scott's
RICO claim based on governmental immunity.

C

Scott also asserts a RICO claim claims against Duebner.
Duebner maintains that the claim is barred by governmental immunity
or by qualified and official immunity.

Duebner argues that he should be accorded governmental
immunity on the same basis as the City. Because the court has held
that the City not entitled to governmental immunity, Duebner is
not either.

The court concludes, however, that Duebner is entitled to
qualified immunity, at least for the reasons the court sets out
below in granting summary judgment in his favor on Scott's RICO
claim. *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 588 (5th Cir.
1999) (holding that individual defendants were entitled to
qualified immunity from suit alleging RICO claim because rights
that served as basis of claim were not clearly established at time
of defendants' alleged acts).[9]

---

[9]Although it is well settled that qualified immunity is not
analyzed in identical terms as are the merits of Scott's RICO
claim, in these circumstances—where Duebner is clearly entitled to
summary judgment and has already participated to some extent in the
litigation—it is expedient to apply the merits decision to his
qualified immunity defense.

IV

The court now turns to parts of the motions for summary judgment of the City, Duebner, and TruGreen in which they seek dismissal of Scott's RICO claim.

A

Because the City, Duebner, and TruGreen will not have the burden of proof on Scott's RICO claim at trial, they can obtain summary judgment by pointing the court to the absence of evidence to support an essential element of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once they do so, Scott must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Summary judgment is mandatory if Scott fails to meet this burden. *Little*, 37 F.3d at 1076. An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Scott. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Scott's failure to produce proof as to any essential element renders all other facts immaterial. *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).

Scott has also moved for summary judgment establishing that she is entitled to recover on her RICO claim. Because she bears the burden of proof on this claim at trial, her summary judgment

burden is even higher: she must establish "beyond peradventure all of the essential elements of the claim." *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

B

Scott alleges violations of 18 U.S.C. §§ 1962 and 1961(1)(B) and (5). Section 1962 of RICO makes it unlawful for

> any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962. Section 1961(1)(B) defines "racketeering activity" according to whether it constitutes "any act which is indictable" under several specified sections of title 18 of the United States Code, one of which is mail fraud, in violation of 18 U.S.C. § 1341. Section 1961(5) defines "pattern of racketeering activity," and states that it "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]"

"Reduced to their simplest terms, the essential elements of a

RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Larrew v. Barnes*, 2002 WL 32130462, at *1 n.1 (N.D. Tex. Aug. 27) (Kaplan, J.) (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)), *rec. adopted*, 2002 WL 32130462 (N.D. Tex. Sept. 17, 2002) (Fitzwater, J.).   The City, Duebner, and TruGreen have explicitly pointed in their summary judgment motions to the absence of evidence satisfying the required elements of a RICO claim.

C

The City, Duebner, and TruGreen contend that they are entitled to summary judgment because Scott has failed to produce any evidence of a pattern of racketeering activity.  It is unclear from her amended counterclaim and third-party complaint and response brief whether Scott bases her claim on 18 U.S.C. § 1962(a) or (c), but each requires as an essential element a "pattern of racketeering activity."  As noted, "racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) to include mail fraud.  Scott alleges that there have been "multiple instances of mail fraud in violation of [18] U.S.C. section 1341." Scott Am. 3d Party Compl. ¶ 17.  She advances the same assertion in her response to the summary judgment motions.

The elements of mail fraud under 18 U.S.C. § 1341 are "(1) a

- 17 -

scheme to defraud (2) which involves a use of the mails (3) for the purpose of executing the scheme." *United States v. Ingles*, 445 F.3d 830, 835 (5th Cir. 2006) (citing *United States v. McClelland*, 868 F.2d 704, 706 (5th Cir. 1989)).  There must be an "intent to defraud." *United States v. Harms*, 442 F.3d 367, 372 (5th Cir. 2006) (quoting *United States v. Bieganowski*, 313 F.3d 264, 275 (5th Cir. 2002)).  "[A] defendant acts with the intent to defraud when he acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *United States v. Akpan*, 407 F.3d 360, 370 (5th Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Blocker*, 104 F.3d 720, 732 (5th Cir. 1997)).

Scott does not clearly identify in her brief the specific actions that she contends constitute mail fraud.[10]  In a response that devotes but one paragraph to the evidence that supports this claim, Scott asserts that funds were not delivered to her in the legal manner, as agreed, that the City, Duebner, and TruGreen were attempting to divert funds and checks that should have been forwarded to her, and that they changed the address where checks should have been mailed.  She also advances the conclusory assertion, with no citation to the summary judgment record, that they conspired to commit mail fraud.

---

[10]Scott's brief in opposition to the motions of the City, Duebner, and TruGreen, and in support of her own motion, are essentially the same when addressing her RICO claim.

The City, Duebner, and TruGreen argue that Scott has produced no evidence that by changing the "remit to" address, TruGreen intended to cause pecuniary loss to Scott or to bring about some financial gain to itself.  TruGreen maintains, and has provided evidence, that its sole intent was to have Scott deposit the checks in the contractually required lockbox account and pay the past due amounts.

Scott has neither cited nor adduced *any* summary judgment evidence that would permit a reasonable jury to find that the City, Duebner, and TruGreen committed the predicate acts of mail fraud or conspiracy to commit mail fraud.  Her *ipse dixit* assertions, without supporting evidence, are not enough to survive summary judgment.  In her own motion for summary judgment, in which she must establish her claim beyond peradventure, Scott has not met her burden.  With no evidence of an intent to defraud, she has not shown under the required standard of proof that the City, Duebner, and TruGreen committed mail fraud or conspired to commit mail fraud.

D

Even if the court were to assume that in changing the "remit to" address, TruGreen committed an act of mail fraud, this single act would not be enough to constitute a "pattern of racketeering activity," which requires "at least two acts of racketeering activity" within ten years.  18 U.S.C. § 1961(5).  The City,

Duebner, and TruGreen point to the absence of evidence of more than one so-called act of "racketeering activity," and Scott has not met her burden of producing evidence otherwise.   She alleges in her pleadings and contends in her response brief that there were "[m]ultiple instances of mail fraud," Scott Sept. 11, 2006 Br. 7, but she provides no evidence from which a reasonable jury could make such a finding.   The court concludes that Scott has not met her summary judgment burden of going beyond her pleadings and designating specific facts that show there is a genuine issue for trial.   *Celotex Corp.*, 477 U.S. at 324.   Nor has she established her RICO claim beyond peradventure.   Accordingly, the court grants the motions for summary judgment of the City, Duebner, and TruGreen insofar as they are addressed to Scott's RICO claim, and it denies Scott's motion for summary judgment on her own claim.

E

Scott avers generally that the City, Duebner, and TruGreen have participated in a RICO conspiracy.   Her conspiracy allegations are unclear and conclusory, but the court assumes that her assertion that the City, Duebner, and TruGreen "conspired to commit mail fraud" is intended to aver that they conspired to violate RICO.[11]

―――――――――――

[11]The allegation that persons conspired to commit mail fraud is not, of course, the equivalent of a claim that they engaged in a RICO conspiracy that involved mail fraud.   Conspiracy to commit mail fraud is addressed in 18 U.S.C. § 371, which makes it unlawful for "two or more persons [to] conspire . . . to commit any offense

The City, Duebner, and TruGreen maintain that Scott has produced no evidence of any of the elements required for the conspiracy claim.  The City and Duebner posit that the City was unaware that the change of address was unauthorized.  TruGreen argues that there is no evidence that it and the City agreed to commit mail fraud.

Scott has failed to adequately plead a RICO conspiracy, much less to adduce evidence that would permit a reasonable jury to find one.  In *Tel-Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134 (5th Cir. 1992), the Fifth Circuit held that the plaintiffs had failed to plead the elements of a RICO conspiracy merely by alleging the existence of a conspiracy "to defraud

---

against the United States."  "The three elements of conspiracy to commit mail fraud are (1) an agreement between appellant[ ] and others (2) to commit the crime of mail fraud, and (3) an overt act committed by one of the conspirators in furtherance of that agreement.  Additionally, the defendant must have acted with intent to defraud."  *United States v. Garza*, 429 F.3d 165, 168-69 (5th Cir. 2005) (per curiam) (citations omitted).  In the case of a RICO conspiracy, it must be proved that the accused persons conspired to commit a substantive RICO offense.  A RICO conspiracy is made unlawful by 18 U.S.C. § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section [i.e., § 1961]."  "To prove a RICO conspiracy, the government must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense."  *United States v. Delgado,* 401 F.3d 290, 296 (5th Cir. 2005) (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857-58 (5th Cir. 1998)).  A RICO conspiracy thus has RICO-specific requirements——such as an agreement by at least two conspirators to engage in a pattern of racketeering activity——that are not involved in conspiracies to commit other substantive offenses that might qualify as "racketeering activity" under 18 U.S.C. § 1961(1)(B).

- 21 -

plaintiffs." *Id.* at 1140.  Although the plaintiffs had pleaded "the conclusory allegation that the Defendants conspired,' they ha[d] not pleaded the elements of a RICO conspiracy" because "[t]he complaint [did] not allege facts implying any agreement involving each of the Defendants to commit at least two predicate acts." *Id.* Agreeing with the Second Circuit, the panel concluded that "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Id.* at 1140-41 (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990), and citing *Glessner v. Kenny*, 952 F.2d 702, 714 (3d Cir. 1991), and *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 47 (1st Cir. 1991)).

Moreover, Scott has not cited or produced evidence to support her RICO conspiracy claim.  In fact, she does not even address it in response to the arguments that summary judgment should be granted dismissing the claim.  The mere allegation that "[t]he CITY OF DALLAS and MARK D[UE]BNER conspired and breached the Contract with TRUGREEN.  They conspired to commit mail fraud," Scott Sept. 11, 2006 Br. 7, is not a summary judgment response because it cites no evidence that would permit a reasonable jury to find in Scot's favor.  It is insufficient to meet Scott's burden to raise a genuine issue of fact.

Accordingly, the court grants summary judgment dismissing

Scott's RICO conspiracy-based claim.

V

A district court retains the discretion to remand a case after the claims that gave rise to federal jurisdiction and to removal have dropped out of the case. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 338-39 (5th Cir. 1999) (affirming remand of state claims after plaintiff's amended complaint dropped claim that was completely preempted). This lawsuit now involves only state-law claims, including issues peculiar to Texas state law, such as governmental and official immunity and the Texas Rule 185 sworn account procedure, that should be litigated in and decided by a state court. This lawsuit was not even removable in the first place, and the court has subject matter jurisdiction only because, following removal, Scott filed an amended counterclaim and third-party complaint that allege a RICO claim (a claim that has now been dismissed). The case is not set for trial, and the parties can facilely reformulate the remaining grounds of their summary judgment motions for use in state court. Accordingly, the court in its discretion remands the remaining claims to state court.

\*     \*     \*

The court grants the City and Duebner's August 10, 2006 motion for summary judgment and TruGreen's August 10, 2006 motion for summary judgment to the extent that it dismisses Scott's RICO claim

with prejudice.  The court denies Scott's October 24, 2006 motion for summary judgment to the extent she seeks summary judgment establishing that she is entitled to recover under RICO.  By Rule 54(b) judgment filed today, Scott's RICO claim is dismissed with prejudice.  The court remands the balance of this case to the 298th Judicial District Court of Dallas County, Texas.  The clerk of court shall effect the remand according to the usual procedure.

**SO ORDERED.**

March 16, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 24 -